**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**MELVIN BURKE,**

    Petitioner,

vs.                                            **CASE NO. 4:04cv492-MP/WCS**

**JAMES CROSBY,**

    Respondent.

_____/

## REPORT AND RECOMMENDATION

    This is a petition for writ of habeas corpus filed by Melvin Burke pursuant to 28 U.S.C. § 2254.  Doc. 1 (with Exhibits A through G).  Petitioner challenges his conviction for capital sexual battery upon a child under the age of 12 by a person 18 years of age or older, and for lewd and lascivious assault upon a child under the age of 16, in the Circuit Court of the Second Judicial Circuit, in and for Liberty County, Florida, case number 98-CF-51.  Respondent filed an answer, doc. 10, and the state record, doc. 11, and Petitioner filed a traverse, doc. 12.

    Respondent concedes that the petition was timely filed and that state court remedies have been exhausted.  Doc. 10, pp. 4, 5, 12.  Petitioner presents two grounds.

The first ground was presented by means of a state Rule 3.850 motion, and the second was raised on direct appeal.

**Section 2254 Standard of Review**

For claims which were properly exhausted and adjudicated in state court, this court's review is limited. "[A] determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Bui v. Haley, 321 F.3d 1304, 1322 (11th Cir. 2003) (citing the statute, footnote omitted). Moreover, as to a factual issue adjudicated by the state court, Petitioner must show that the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2); 321 F.3d at 1322 (citing the statute). Section 2254(d)(2) is satisfied "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748 , 752 (8th Cir. 2003) (citing § 2254(e)(1), other citation omitted).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. Williams v. Taylor, 529 U.S. 362, 404-406, 120 S.Ct. 1495, 1519-1520, 146 L.Ed.2d 389 (2000); Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citing Williams). "[C]learly established Federal law, as

Case No. 4:04cv492-MP/WCS

determined by the Supreme Court of the United States," refers only to holdings of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court precedent.  <u>Hawkins v. Alabama</u>, 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct. at 1850.

The law governing ineffective assistance of counsel claims was clearly established in <u>Strickland v. Washington</u>, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066, 2068, 80 L.Ed.2d 674 (1984).  <u>Williams</u>, 529 U.S. at 405-406, 120 S.Ct. at 1519-1520; <u>Bell</u>, 535 U.S. at 694-695, 122 S.Ct. at 1850.  Under the two part test of <u>Strickland</u>, Petitioner must demonstrate both deficient performance and prejudice to the outcome.

To establish deficient performance, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  In reviewing the claim, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  Petitioner has a heavy burden to establish the deficient performance prong of <u>Strickland</u>, by showing that "no competent counsel would have taken the action that his counsel did take."  <u>Fugate v. Head</u>, 261 F.3d 1206, 1217 (11th

Cir. 2001) (citation omitted).  There are no rigid requirements, or absolute duty to investigate a particular line of defense.  *Id.*

> Indeed, "[c]onsidering the realities of the courtroom, more is not always better.  Stacking defenses can hurt a case.  Good advocacy requires 'winnowing out' some arguments, witnesses, evidence, and so on, to stress others."

261 F.3d at 121 (citations omitted).

For prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694, 104 S.Ct. at 2068.

Although Strickland explained the performance and prejudice prongs of analysis, "there is no reason . . . to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S.Ct. at 2069.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  *Id.*

If the state court identifies and applies the framework of Strickland in assessing an ineffective assistance claim, its adjudication does not satisfy the "contrary to" language of § 2254(d)(1) even if this court might have applied Strickland differently. Williams, 529 U.S. at 406, 120 S.Ct. at 1520; Bell, 535 U.S. at 698, 122 S.Ct. at 1852. To determine whether the state court's adjudication was an "unreasonable application" of Strickland, Petitioner "must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance . . . .  Rather, he

must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." Bell, 535 U.S. at 698-699, 122 S.Ct. at 1852 (*citing* Williams). "[T]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Williams v. Taylor, 529 U.S. at 410, 120 S.Ct. at 1522.

**Ground One**

Petitioner contends that his trial attorney was ineffective for failing to give notice that the speedy trial time had expired. Petitioner contends that his speedy trial time expired on or about February 15, 1999.

Petitioner had two trial attorneys. He was first represented by Assistant Public Defender Ed Harvey and later retained Dennis Boothe. Petitioner clarifies in his memorandum that it is Boothe who he contends was ineffective for failing to file a "Notice of Expiration of Speedy Trial Time." Doc. 1, memorandum, pp. 7-9 (faulting Boothe for failing to file the notice on February 15, 1999, after Boothe had entered an appearance).

In ruling on Petitioner's Rule 3.850 motion after remand by the First District Court of Appeal, the trial court found that Petitioner's first attorney, Assistant Public Defender Ed Harvey, appeared before the court on December 10, 1998, and advised the court that "it looked like a pretty large investigation was involved." Doc. 1, Exhibit A, p. 2, ¶ 6. Mr. Harvey further said that while Petitioner "wanted the case to hurry along," he "did not want Mr. Harvey to not be prepared to represent" Petitioner. *Id*. The court further found: "Counsel also advised the Court that he did not believe a realistic case management could be set before February, 1999, and requested that case

management be continued until such time."  *Id.*  The court concluded from this exchange that Mr. Harvey waived Petitioner's right to a speedy trial.  *Id.*

The court also noted that Petitioner faulted his retained counsel, Dennis Boothe, for failing to object concerning speedy trial, but observed that Boothe did not file a notice of appearance until January 21, 1999, "over a month after Defendant's speedy trial had been waived by his prior counsel."  *Id.*, p. 3, ¶ 7.  The court found that Boothe "requested case management to be continued to March 4, 1999, . . . ."  *Id.*, p. 3, ¶ 8.  The court concluded, therefore, that Boothe was not ineffective "for failing to file a Notice of Expiration of Speedy Trial . . . ." since both Harvey and Boothe had waived the issue.  *Id.*, p. 3, ¶ 9.

These factual and legal findings are supported by the record.  The record reflects that Harvey appeared on behalf of Petitioner at a case management conference on December 10, 1998.  Doc. 1, Exhibit B.  Harvey stated:

> Judge, we're just here for case management on that case [Melvin Burke].  Mr. Burke is in custody.  We have gotten discovery listing – it looks to me like a pretty large investigation here.  Mr. Burke is facing serious, serious, serious charges here.  I don't think – I know Mr. Burke wants to hurry this up, but I know he also wants – doesn't want me to just go in not prepared.
>
> I don't think a realistic case management date could be set before February.

*Id.*, p. 3.  The prosecutor agreed.  *Id.*  The prosecutor then informed the court that February 4, 1999, was the case management date in February, and that date was set.  *Id.*  The date was before the expiration of the speedy trial period, on February 15, 1999.

A bond hearing and case management conference occurred on February 4, 1999, and Petitioner was represented at that conference by Dennis Boothe.  Doc. 1,

Exhibit C.  Boothe stated that he had "just been retained."  *Id.*, p. 3.  After the parties argued the issue of bond, the prosecutor reminded the court that the case had been set for case management.  *Id.*, p. 5.  He noted that depositions had been cancelled "last Monday," and he did not "know where we are at now."  *Id.*  The court asked:  "3-4?"  *Id.*, p. 6.  This was a proposal to rescheduled the case management conference for March 4th.  Boothe responded:  "Yes, Your Honor *if we could* put it on 3-4 for case management."  *Id.* (emphasis added).  The court replied:  "All right.  *And then we can set it for trial.*"  *Id.* (emphasis added).

  The state court's factual determination that Harvey requested a continuance of the case management conference until February 4, 1999, is plainly correct.  While Harvey did not use the word "continuance," he said he was not ready and he needed more time.  Similarly, the factual determination that Boothe requested a continuance of the case management conference until March 4, 1999, is supported by the record.  The March 4th date was suggested by the court as a question.  Boothe answered the question with his own question ("*if we could* put it on 3-4").  The question was, in effect, a motion for a continuance.  Petitioner has not rebutted by clear and convincing evidence the presumption that these findings of fact by the state court are correct.

  Respondent does not contest Petitioner's contention that his speedy trial deadline was February 15, 1999.  *See* FLA. R. CRIM. P. 3.191(a), providing that trial must commence within 175 days from arrest if the charge is a felony.  The law is settled in Florida that "when a defendant requests a continuance prior to the expiration of the applicable speedy trial time period for the crime with which he is charged, the defendant waives his speedy trial right as to all charges which emanate from the same criminal

Case No. 4:04cv492-MP/WCS

episode." Stewart v. State, 491 So. 2d 271, 272 (Fla. 1986) (citations omitted); Atkins v. State, 785 So. 2d 1219, 1220 (Fla. 4th DCA 2001); Smith v. State, 482 So. 2d 521, 522 (Fla. 2d DCA 1986) (waiver by stating "we will be ready for trial December 10," a date beyond the speed trial deadline); Robbins v. State, 370 So. 2d 420, 423 (Fla. 1st DCA 1989), *cert. denied*, 381 So. 2d 769 (1980) ("appellant waived the rule for the last statement his attorney made to the court was that he would be ready for trial on January 30, 1978, the date that the court set for such trial.").

Since the speedy trial right had been waived by Harvey, and was waived again by Boothe on February 4, 1999, Boothe could not have been ineffective by failing to give notice of the expiration of the speedy trial period after February 15, 1999.[1] Thus, the state court's adjudication of the merits of the federal claim has not "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

**Ground Two**

Petitioner contends that he was denied due process because a juror concealed the fact that she knew the victim and the victim's family. Petitioner points out that juror

---

[1] Petitioner does not contend that Harvey was ineffective for requesting a continuance of the case management conference to February 4th, or that Boothe was ineffective for asking for another continuance to March 4th. Petitioner makes the conclusory claim that the delay "resulted in the victim changing her version of events," doc. 12, p. 5, but this claim is without any support showing prejudice. Further, a change of "version of events" would have been an occasion for thorough cross examination and might have worked in Petitioner's favor. In any event, Petitioner's claim in state court was not prejudice arising from delay, but the failure of counsel to capitalize upon the alleged expiration of the speedy time period.

Case No. 4:04cv492-MP/WCS

Whitfield failed to admit in voir dire that she knew the victim and her family.  Doc. 1, memorandum, pp. 11-12, citing attached Exhibit F, pp. 31-34.  The question was directed to the panel several times, and specifically was directed once to prospective jurors in the back row.  *Id.*, p. 34.  Petitioner asserts that Whitfield was in the back row when this question was directed to prospective jurors seated in the back row.

During voir dire, the prosecutor identified the child victim and her father, mother, and step-mother by name.[2]  Doc. 1, Exhibit F, pp. 31-32.  The prosecutor then asked: "Do any of you *know* or are related to *the victim*?"  *Id.*, p. 32 (emphasis added).  At the hearing on the motion for a new trial, the prosecutor represented that this question was directed generally, to all prospective jurors.  Doc. 1, Exhibit G, p. 27.  While the question only mentioned knowledge of the victim, the jurors understood this question to include whether they knew the other named family members, and the prosecutor pursued those broader responses with each, asking each of those who responded about the nature of their knowledge of the named family members.  *Id.*, Exhibit F, p. 32-34.  The prosecutor then solicited similar responses from "anybody else on the back row?"  *Id.*, p. 34.

After conviction, Petitioner's attorney moved for a new trial and the trial court held an evidentiary hearing.  Doc. 1, Exhibit G, transcript of hearing.  Angela Weeks then testified that she went to school with the victim's father.  *Id.*, p. 17.  She said she went to school through the 11th grade, leaving school in 1984.  *Id.*  She said she remembered an occasion when the victim's father was at the home of Ms. Whitfield.  *Id.*, p. 18.  She

---

[2] The names will not be repeated here, but are used in the record.

was 14 years old when this occurred.[3]  *Id.*, p. 20.  She said that "all of us kids" were together "all the time," and this lasted for about 8 years.  *Id.*, p. 19.  Weeks said that she, the victim's father, and Whitfield's daughter, Vickie, were good friends.  *Id.*, p. 23.  While no one inquired further, it is a fair reading of this testimony that Weeks was describing her relationships when she was in school, 15 or more years earlier.

As noted above, the prosecutor argued during the hearing on the motion for a new trial that the question he initially posed was generally directed to all prospective jurors, but he contended that he never specifically asked Ms. Whitfield whether she knew the victim or the victim's family.  Doc. 1, Exhibit G, p. 27.  This is not a fair reading of the transcript, as explained above.  When the prosecutor turned to those seated in the back row, he was soliciting responses about the victim's family, responses like the ones he had just been pursuing.

Ms. Whitfield testified at the hearing on the motion for a new trial that she heard the prosecutor ask whether any prospective juror knew the child victim.  *Id.*, p. 28.  She said she did not know the victim and had never seen her.  *Id.*  As to the victim's father, she said:

> Actually I wouldn't have known him [the victim's father] if my life depended on it when he walked in that door.  I did see him when he was a young boy because they lived – the mom lives four houses to me, but, no, I wouldn't have known [the victim's father] if he would have hit me in the face when I come in here.

*Id.*  She repeated:

---

[3] Students are usually 14 years old in 9th grade, so this would have been in 1982, 17 years before the hearing.

Case No. 4:04cv492-MP/WCS

> The victim's father, I knew him as a boy. I don't know him as a man. I haven't seen him in that many years. Yes. I know who he is. Certainly.

*Id.*, p. 29. Ms. Whitfield further testified that she did not consider herself "good friends" with the mother of the victim's father, but she knew she had been "in ill health for a long time." *Id.* She said they were "friends." *Id.*

Ms. Whitfield was asked whether she thought that her former relationship with the victim's father was something she should have revealed to the court, and she responded:

> No, because I thought about it and I realized that I could definitely do a right decision because, you know, I really don't feel that [the victim's father] means a thing to me to tell you the truth. So I had no reason to be, you know, prejudiced in either direction. And I didn't even know this trial was coming up. I never even heard about his child before.

*Id.*, p. 30.

In summary, Ms. Whitfield plainly did not respond to the question about knowing the victim because she did not know her. She did not respond to the broader question of knowing the victim's father because she felt she no longer knew him and felt that her prior knowledge of him would not affect her judgment. She did not reveal that the victim's father's mother lived nearby because she was not asked whether she knew the victim's father's mother.

Respondent relies upon <u>Mitchell v. State</u>, 458 So. 2d 819 (Fla. 1st DCA 1984). That case involved state law governing a motion for a new trial based upon a failure of a prospective juror to disclose information in response to a question during voir dire, and held:

> Even assuming, as the trial court found, that the juror had no intent to deceive, nevertheless relief will be afforded where (1) the question

> propounded is straightforward and not reasonably susceptible to misinterpretation; (2) the juror gives an untruthful answer; (3) the inquiry concerns material and relevant matter to which counsel may reasonably be expected to give substantial weight in the exercise of his peremptory challenges; (4) there were peremptory challenges remaining which counsel would have exercised at the time the question was asked; and (5) counsel represents that he would have peremptorily excused the juror had the juror truthfully responded.

458 So. 2d at 821.

Respondent also cites a federal case for "the federal rule." The federal rule for granting a new trial when a juror withholds information during voir dire was established in McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). Applying the harmless error rule, the Court held that

> to obtain a new trial in such a situation [where a juror withholds information due to an honest mistake], a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause. *The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial*.

464 U.S. at 556, 104 S.Ct. at 850 (emphasis added).

It is not clear whether the trial court applied the state standard, but the court seems to have found that the information withheld by Ms. Whitfield was not material. Doc. 1, Exhibit G, pp. 48-50. That is the gist of Respondent's argument now. Doc. 10, p. 17.

It is not known to what extent the test set forth in Mitchell v. State is purely a matter state law, a violation of which would not necessarily be cognizable under § 2254. *See, e.g.*, Engle v. Isaac, 456 U.S. 107, 119-120 and n. 19, 102 S.Ct. 1558, 1567-1568 and n. 19, 71 L.Ed.2d 783 (1982). The underlying federal due process claim is that

Petitioner was entitled to an impartial jury, and voir dire plays an important part.[4] As to that federal due process claim to an impartial jury, the bar is set quite high:

> It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

Irvin v. Dowd, 366 U.S. 717, 722-23, 81 S.Ct. 1639, 1642-43, 6 L.Ed.2d 751 (1961) (citations omitted). "[T]he test is 'whether the nature and strength of the opinion formed are such as in law necessarily . . . raise the presumption of partiality.' " 366 U.S. at 723, 81 S.Ct. at 1643.

In a somewhat more recent case, the Court considered a claim of juror bias in a state habeas corpus petition arising from the fact that the juror had an application for employment as an investigator for the prosecuting attorney's office. Smith v. Phillips, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). The prosecutors learned of this application but decided to reveal it to no one. There was insufficient evidence that the juror was actually biased, but the district court had granted habeas relief, reasoning that bias should be imputed on these facts. 455 U.S. at 214, 102 S.Ct. at 944. The Court

---

[4] "The Constitution, after all, does not dictate a catechism for voir dire, but only that the defendant be afforded an impartial jury. Even so, part of the guarantee of a defendant's right to an impartial jury is an adequate voir dire to identify unqualified jurors." Morgan v. Illinois, 504 U.S. 719, 729, 112 S.Ct. 2222, 2230, 119 L.Ed.2d 492 (1992).

rejected an imputation of bias, finding that affording a post-conviction hearing to permit a showing of actual bias was sufficient to satisfy due process. The Court reasoned:

> These cases demonstrate that due process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as *voir dire* and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

455 U.S. at 217, 102 S.Ct. at 946.

Applying these standards, Petitioner has not shown a violation of due process here. Ms. Whitfield did not know the victim at all, and only knew the father of the victim through encounters when the father of the victim was in his teen years, presumably before he had children, 15 or more years earlier. At the time of the trial, Ms. Whitfield did not recognize the father of the victim when she saw him. She did not reveal this information because she felt she could be fair as a juror. Petitioner has not shown that Ms. Whitfield had any preconceived notion as to the material facts of the case based upon her knowledge of the victim's father when he was a teenager, 15 years earlier. Had Ms. Whitfield revealed this information during jury selection, she would not have been subject to challenge for cause. Nor has Petitioner shown that he was denied a fundamentally fair trial by being deprived of a potential peremptory challenge. There is no evidence that had Boothe had a peremptory strike left, and no evidence that he would have used a peremptory strike had the information discussed above been known to him. Ground Two, therefore, is without merit.

Accordingly, it is **RECOMMENDED** that petition for writ of habeas corpus filed by Melvin Burke pursuant to 28 U.S.C. § 2254, doc. 1, challenging his conviction for capital sexual battery upon a child under the age of 12 by a person 18 years of age or older, and for lewd and lascivious assault upon a child under the age of 16, in the Circuit Court of the Second Judicial Circuit, in and for Liberty County, Florida, case number 98-CF-51, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on December 27, 2005.

s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**